[Civ. No. 13768.   Second Dist., Div. Three.   Dec. 31, 1942.]

PETE LUISI, Appellant, v. A. P. COVIELLO, Respondent.

468

Stanley Visel for Appellant.

A. P. Coviello, in pro. per., and Paul Angelillo for Respondent.

WOOD (Parker), J.—Plaintiff appeals from a judgment for defendant in an assault and battery action.

Defendant, an attorney at law, owed plaintiff a balance of $50 on a promissory note, but he had not paid it for the reason, according to his testimony, that plaintiff would not surrender the note. Defendant also claimed that plaintiff owed him $15 for legal services, but plaintiff denied such indebtedness.

Plaintiff went to defendant's office to collect said balance and as he entered the office he had a black oil-cloth bag containing a piece of meat, a goat's leg about 18 inches in length, under his arm. Defendant thought, so he testified, that the bag contained a hatchet or some instrument, and when plaintiff approached him in a belligerent manner and refused to tell what was in the bag, defendant took the bag from plaintiff. It was in connection with the taking of the bag from plaintiff that plaintiff contended that defendant committed the assault and battery.

The grounds of appeal are that the evidence was insufficient, and that certain findings did not support the judgment for the reason they included negative pregnants and therefore implied the truth of plaintiff's claims.

Plaintiff testified that as he entered defendant's office about 1 p. m. on June 10, 1940, defendant was in the outside office, standing by his secretary's desk and talking to her; that defendant asked him why he had come, and plaintiff said, "I want my money; I want you to pay me," and, "I am going to collect that or I am going to court"; that defendant then said, "What have you got in there [referring to the bag]?" and plaintiff said, "It is none of your business"; that defendant then punched him in the eye, knocked him down, and kicked him on the chest; that he "passed out" when he was on the floor; that defendant helped him up, put him on the sofa, looked in the bag, and said, "You have got meat"; that his nose was bleeding and that defendant took him into the inner office to a sink where plaintiff washed the blood from his face; that when he was in the inner office the secretary locked the door and he could not get out "for about

three hours''; that the eye which had been hit was closed by the blow; that he had been blind in the other eye for several years; that he left the office about 4 p. m., went to the police station, and from there he was taken to the receiving hospital and then to the general hospital, where he stayed nine days; that another attorney had been representing him in regard to the collection of the note and had told him on June 10th before he went to defendant's office that nothing could be done and if defendant would not pay the note that plaintiff should go to the small claims court; that he was 63 years of age and could not read or write English.

A police officer, called as a witness by plaintiff, testified that he saw plaintiff at the police station about 4:45 p. m.; that his eye was swollen practically shut, was bloodshot, and bulging from the socket; and that he complained of pain in his chest.

A physician, called as a witness by plaintiff, testified that plaintiff had a hemorrhage of the eye, which was produced by a blow.

Defendant testified that he had known plaintiff about seven years; that plaintiff did ranch work for him occasionally during a period of three years; that plaintiff came to his office at 3 p. m. and left about 3:45 p. m.; that when plaintiff came in, defendant, was standing by his secretary's desk and talking to her; that defendant asked him why he was there, and was told that his attorney had sent him ''for his money''; that defendant said he did not wish to talk to him, but would talk to his attorney and told him to leave the office; that plaintiff kept coming toward the desk and said that he was his own boss; that defendant said, ''What have got in that bag?'' and plaintiff said, ''That is my business,'' and when plaintiff came near him, defendant grabbed the bag, took it from him, pushed him into a chair, opened the bag and found a piece of wrapped meat which plaintiff said was a goat's leg; that he took the bag from him because he thought it was a hatchet or some instrument; that he did not strike plaintiff; that plaintiff said he did not have the promissory note with him but it was at his home; that defendant then asked plaintiff to wait until he telephoned plaintiff's attorney, and if it was agreeable with the attorney he would pay the note, since the note could be obtained and surrendered, and he then would file suit against plaintiff for

the $15; that plaintiff said he did not care whether he was sued or not but would wait until defendant talked with the attorney; that he waited about 20 minutes after that conversation, did not leave the chair, did not go into the inner office, and did not use the wash room; that defendant did not see any blood at all; that after several unsuccessful efforts were made by defendant to communicate with the attorney by telephone, plaintiff said he could not wait any longer; that defendant then noticed that plaintiff's eye was bloodshot and he said to plaintiff, ''What is the matter with your eye?'' and plaintiff said, ''I must have scratched myself in the tussle''; that defendant offered to take plaintiff to plaintiff's home in an automobile, but plaintiff said he had another appointment, and he would be back the next morning; and plaintiff then left the office.

The attorney, referred to as the attorney for plaintiff in the matter of collecting the note, testified that negotiations between him and defendant prior to June 10th resulted in a statement being made by the defendant that he would pay the note without prejudice to his right to sue for the $15 which he claimed plaintiff owed him; that he (the attorney) did not tell plaintiff at any time to go to defendant's office.

The secretary of defendant gave testimony in substance the same as that given by defendant, and in addition thereto testified that the demeanor of plaintiff during the six or seven years she had known him was that he was always very loud, very noisy, very belligerent, and quarrelsome; that he used to tell her about fights he had had; and that she thought he had a club in the bag.

Appellant argues that the evidence was insufficent to support the judgment for the reason the testimony of defendant and his secretary that defendant did not strike plaintiff cannot be reconciled with the testimony of the police officer that the eye was swollen, bloodshot, and bulging, nor with the testimony of the doctor that there was a hemorrhage of the eye produced by a blow. Basing his conclusion upon that argument, appellant asserts that the court should have found in favor of plaintiff.

The trial judge had the benefit of personal observation of the witnesses. In considering the sufficiency of findings of a trial court, it is the function of an appellate court to consider not the relative weight of conflicting evidence, but only the legal sufficiency of the evidence to support the find-

ings. (*Dell* v. *Hjorth*, (1942) 51 Cal.App.2d 576, 578 [125 P.2d 505].) The issue as to whether defendant struck plaintiff was one of fact and there was a substantial conflict in the evidence on that issue. Under the established rule as to the function of an appellate court in such circumstances, the evidence was sufficient to support a judgment in favor of defendant.

■ Appellant asserts further that certain findings were cast in the form of negative pregnants and that they imply the truth of plaintiff's claims and therefore do not support the judgment.

One finding so criticised was in part as follows: "That it is not true, as alleged in said Paragraph III, that plaintiff conducted himself at all times on the said 10th day of June, 1940, in a proper manner, in an effort to collect the balance so due him." The argument of appellant is that such finding implies that plaintiff did conduct himself in a proper manner during some of the time on the day mentioned and that the time might have been immediately before the alleged assault. It is to be noted, however, that the remainder of the paragraph immediately following the part of the finding criticised by appellant was as follows: "The court finds that at the time and place*d* [places] alleged in Paragraph III of the Complaint, the plaintiff conducted himself in a threatening, insulting and belligerent manner." This additional sentence of the findings and the sentence quoted by appellant, considered together, constitute a finding that plaintiff did not conduct himself in a proper manner immediately preceding the alleged assault.

■ Another finding so criticised by appellant was in part as follows: "That it is not true, as alleged in Paragraph IV of the complaint, 'that without any provocation or justification, and without any warning or right, the said defendant committed a violent and physical assault upon the plaintiff, striking him in the eye, and face, from which blows the plaintiff was knocked to the floor of the office of said defendant;'

"That it is not true, as alleged in said Paragraph IV, 'that while lying upon the floor and so injured, and blinded by the blows, the defendant repeatedly kicked the plaintiff in the chest and body and otherwise hurt and injured said plaintiff;'." The argument is that the last quoted findings imply that the alleged assault was without any provocation *or* jus-

tification *or* warning *or* right, and that defendant might have committed either a violent *or* physical assault by striking plaintiff either in the eye *or* face; and that defendant might have kicked plaintiff in the chest *or* the body *or* otherwise hurt *or* injured plaintiff. In other words, the criticism is that the findings were in the conjunctive rather than in the disjunctive. The findings were that certain quoted allegations of the complaint were not true. At the place in the findings where such allegations of the complaint were negatived, as a whole, in the language of the complaint, there was no finding wherein certain of the alleged acts were disjoined from the other alleged acts and expressly found not to be true. However, after the court made negative findings, in the language of the complaint, as to each paragraph of the complaint on the subject of liability, by reference to each paragraph generally and as a whole, it then found as follows: ''In that connection the Court specifically finds that the plaintiff, when he entered Defendant's office on the said 10th day of June, 1940, did approach defendant in a manner calculated to arouse the apprehension and fear of the defendant, and to justify the defendant's act in making certain that no weapon was being carried by the plaintiff in the 'bag' he held under his arm. The Court further finds that the acts and conduct of the defendant during all of said time were fully justified, and that the defendant used only such force as was necessary under the circumstances.

''Further in that connection the Court specifically finds that the only injury suffered by the plaintiff was a 'blood-shot eye,' and that the said injury was suffered in the scuffle which took place at the time defendant took the said bag away from the plaintiff.''

In addition to the finding just quoted the court found that ''the allegations contained in the second, separate and distinct defense of the Answer to the Complaint herein are true.'' The said allegations of said second defense, so found to be true, include the following: ''That on or about the 10th day of June, 1940, around the hour of 3:00 P. M. thereof, the plaintiff herein came to the office of the defendant; that at said time and place the plaintiff conducted himself in a threatening, insulting and belligerent manner. In that connection this defendant alleges that at said time and place the plaintiff had in his hand a large oil-cloth bag in which was concealed an object, which to all appearances resembled a

hatchet or some other similar object or weapon; that at said time and place the plaintiff approached the defendant in a menacing manner, and demanded to be paid the sum of $65.00; that this defendant then and there asked the plaintiff to leave the office and to see his said attorney above mentioned; that the plaintiff stated in a loud voice that he would not leave defendant's office, and continued to walk toward defendant; that the defendant then and there fearing that the plaintiff would inflict bodily injury or an assault, took said bag from the hands of the plaintiff to assure himself, and defendant did assure himself, that the said bag contained no deadly weapon. Further in that connection this defendant alleges that at no time or at all, at said time and place, or at any other time, did this defendant strike, kick, or commit a violent and physical assault or any other assault upon the plaintiff. This defendant specifically denies that he struck plaintiff in the eye or any other part of his body.''

The findings of the court when considered as a whole expressly repel the implications created by the general findings which negatived, in the language of the complaint, certain quoted allegations of the complaint.

The judgment is affirmed.

Shinn, Acting P. J., and Bishop, J. pro tem., concurred.